UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 13-01838-JGB (OPx)** | Date | April 28, 2014 |
|---|---|---|---|
| Title | *McFarland v. JP Morgan Chase Bank et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order GRANTING IN PART Defendants' Motion to Dismiss (Doc. No. 9) WITH LEAVE TO AMEND (IN CHAMBERS)

Before the Court is Defendants' Motion to Dismiss the Complaint for failure to state a claim upon which relief can be granted. (Doc. No. 9.) The Court finds this matter suitable for resolution without a hearing pursuant to Local Rule 7-15. After considering the papers timely filed in support of and in opposition to the motion, the Court GRANTS IN PART the motion WITH LEAVE TO AMEND.

I. BACKGROUND

On September 4, 2013, Plaintiff Innette D. McFarland ("Plaintiff" or "McFarland") filed a Complaint against Defendants JP Morgan Chase Bank, N.A. ("JP Morgan"), Citibank, N.A. as trustee for Bear Stearns Alt-A-Trust, II, Mortgages Pass-Through Certificate, Series 2007-1 ("Citibank"), Barrett Daffin Frappier Treder & Weiss, LLP ("Barrett Daffin"), Residential Credit Solutions, Inc. ("RCS"), and fictitious entities for violations of (1) California Civil Code § 2923.5, (2) California Homeowner's Bill of Rights, (3) negligent misrepresentation, (4) duty of good faith and fair dealing, (5) unfair and deceptive practices, and (6) cancellation of instruments. (Compl., Doc. No. 1.) On December 23, 2013, all Defendants except Barrett Daffin (collectively, "Defendants") filed a motion to dismiss. ("MTD," Doc. No. 9.) Plaintiff

opposed on January 6, 2014. ("Opp'n," Doc. No. 14.) Defendants replied on January 13, 2014. ("Reply," Doc. No. 18.)

The Complaint alleges the following facts. On May 31, 2007, Plaintiff entered into a mortgage agreement with Bear Stearns as the lender in the amount of $1,574,650.00 that was secured by property located at 1060 Cleveland Way, Corona, California ("Subject Property"). (Compl. ¶ 18.) Ticor Title Company was the trustee and Mortgage Electronic Registration Systems, Inc. ("MERS") was the nominee for the lender and the beneficiary under the security instrument. (Id.)

In August 2008, Plaintiff worked with Donna Eide at EMC Mortgage ("EMC") to work out a loan modification. (Id. ¶ 22.) EMC told Plaintiff that if she could make trial payments for the next six months, EMC would send her a loan modification application. (Id.) Plaintiff made trial payments for three years and again contacted EMC to ask for a loan modification, but Plaintiff was not offered one. (Id.)

Plaintiff alleges that she was forced to file bankruptcy in 2010 due to lack of cooperation from EMC and JP Morgan regarding modification of her loan. (Id. ¶23.) She further contends that during the attempted modification process, she repetitively faxed loan modification documents and was transferred between several representatives, but to no avail. (Id. ¶¶ 24-25.)

On May 25, 2011, an Assignment of Deed of Trust was recorded, assigning Plaintiff's Deed to Citibank, undersigned by MERS, as trustee for a securitized trust. (Id. ¶ 26.) On February 22, 2012, MERS assigned the Deed of Trust to Citibank as trustee for a different securitized trust. (Id. ¶ 27.) Plaintiff alleges that under the Pooling and Service Agreement of the subject securitized trust, the assignment cut-off date was August 1, 2007 and the closing date was August 31, 2007, but these assignments took place on May 25, 2011 and February 22, 2012. (Id. ¶ 28.)

On March 26 2012, a Notice of Default was recorded, despite Plaintiff's allegations that she continued to submit loan modification documents to JP Morgan. (Id. ¶¶ 29-30.) Plaintiff alleges that Defendants' actions amounted to "dual tracking." (Id. ¶ 29.) Christopher Baca of Barrett Daffin signed the Notice of Default, as agent for the beneficiary, with JP Morgan as the contact for payment or to stop foreclosure. (Id. ¶ 30.) Plaintiff alleges that the Notice of Default is void because Barrett Daffin had not been substituted in as a trustee under the Deed of Trust and therefore wrongfully recorded the Notice of Default. (Id.) Plaintiff also contends that she was always available despite Defendant's Declaration of Compliance stating that a good faith effort was made to contact the borrower before default. (Id.)

On June 22, 2012, Citibank recorded a Substitution of Trustee which substitutes Barrett Daffin as the trustee under the Deed of Trust. (Id. ¶ 31.) Plaintiff contends that this Substitution was recorded approximately three months after Barrett Daffin acted as trustee and improperly recorded the Notice of Default. (Id.) The Substitution included a Declaration of Mailing, signed by "robo-signer" Ric Juarez, an employee of NDEx West, LLC ("NDEx"). (Id. ¶ 32.)

Plaintiff alleges that she continued to work with JP Morgan in 2013 to obtain a loan modification. (Id. ¶ 33.) Plaintiff states that she worked with Defendant's representative "Greg" and continued to endure the repetitive faxing of loan modification documents and other requested documents. (Id.) For example, Plaintiff alleges that in January 2013 she called JP Morgan and requested an update on the status of her loan modification approval, but received no update. (Id. ¶ 34.) Plaintiff alleges that "Luci" at RCS contacted her in May 2013 and offered her help under the Home Affordable Modification Program. (Id. ¶ 35.)

On July 22, 2013, a Notice of Trustee's Sale was recorded. (Id. ¶ 37.) Plaintiff contends that she continued to submit loan modification documents up to and including July 16, 2013. (Id. ¶ 37.) The Notice was signed by Ric Juarez, but Plaintiff alleges that Juarez now stated he was an Associate Director of Barrett Daffin whereas on the Substitution of Trustee Juarez stated he was an employee of NDEx. (Id. ¶ 37.)

Plaintiff alleges that Defendants did not file or record documents that are accurate, complete, and supported by competent and reliable evidence. (Id. ¶ 38.) Plaintiff further alleges that Defendants did not ensure that they have reliable and competent evidence to substantiate the default and that JP Morgan and Barrett Daffin failed to prove that they are the proper parties to institute foreclosure proceedings on the Subject Property. (Id.) Plaintiff alleges that due to Defendants' wrongful actions and her failure to obtain a loan modification, Plaintiff's home is threatened by a sale at public auction. (Id. ¶ 39.)

## II.     LEGAL STANDARD[1]

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 47 (1957) (holding that the Federal Rules require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests") (quoting Fed. R. Civ. P. 8(a)(2)); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint — as well as any reasonable inferences to be drawn from them — as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

---

[1] Unless otherwise noted, all mentions of "Rule" refer to the Federal Rules of Civil Procedure.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). Recently, the Ninth Circuit clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Although the scope of review is limited to the contents of the complaint, the Court may also consider exhibits submitted with the complaint, Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), and "take judicial notice of matters of public record outside the pleadings." Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988).

### III. DISCUSSION

#### A. California Civil Code Section 2923.5

##### 1. Compliance with California Civil Code § 2923.5

California Civil Code § 2923.5(a)(1)(A) prohibits a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent from recording a notice of default until thirty days after initial contact with the borrower "in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure" or after satisfying the due diligence requirements under § 2923.5(e). Argueta v. J.P. Morgan Chase, 787 F. Supp. 2d 1099, 1107 (E.D. Cal. 2011); see also Mabry v. Super. Ct., 185 Cal. App. 4th 208, 212 (2010) ("If Section 2923.5 is not complied with, then there is no valid notice of default and, without a valid notice of default, a foreclosure sale cannot proceed."). Defendants argue that Plaintiff's § 2923.5 claim is flawed because Plaintiff fails to allege any specific § 2923.5 violation and in fact admits Defendants' de facto compliance with § 2923.5. (MTD at 4.) Defendants contend that because Plaintiff "[tried] to work out a loan modification" (MTD at 3) thirty days prior to the recording of the Notice of Default, Plaintiff was, by her own admission, reviewed for a loan modification and has therefore admitted Defendants' compliance with §2923.5. (Id. at 3-4.)

A notice of default may only be filed thirty days after the initial contact with the borrower or after satisfying the due diligence requirements defined under § 2923.5(e). Argueta, 787 F. Supp. 2d at 1107; see also Ghuman v. Wells Fargo Bank, N.A., No. 1:12-CV-00902-AWI-BAM, 2013 WL 552097, at *9 (E.D. Cal. Feb. 13, 2013) (finding that the due diligence requirement to contact the borrower does not require the mortgagee, beneficiary, or authorized agent to successfully contact the borrower, but, rather, merely to try with due diligence to comply with

the statute).  The Court finds that Plaintiff fails to state a cause of action under 2923.5 because the Complaint does not allege any facts contending that Defendants failed to contact Plaintiff to assess her financial situation and explore options to avoid foreclosure or failed to satisfy the due diligence requirements.  See Rossberg v. Bank of America, N.A., 219 Cal. App. 4th 1481, 1488-89 (2013) (holding that a borrower may state a cause of action under § 2923.5 by alleging the lender did not actually contact the borrower or otherwise make the required efforts to contact the borrower despite a contrary declaration in the recorded notice of default).  The Complaint merely alleges that Plaintiff has "always been available to and has continually sought a loan modification," (Compl. ¶ 44) but does not sufficiently allege how Defendants violated the procedural requirements of § 2923.5.

For the foregoing reasons, the Court finds that Plaintiff has failed to plead sufficient facts stating a cause of action and therefore DISMISSES WITH LEAVE TO AMEND Plaintiff's § 2923.5 claim.

### 2. Prejudice

Defendants also contend that courts have held that absent prejudice resulting from a procedural violation in the non-judicial foreclosure process, "any error is immaterial and thus a mere technicality not worthy of court intervention."  (MTD at 4.)  When attacking a non-judicial foreclosure sale, a borrower must overcome a presumption of propriety.  Davenport v. Litton Loan Servicing, LP, 725 F. Supp. 2d 862, 877 (N.D. Cal. 2010) (citing Knapp v. Doherty, 123 Cal. App. 4th 76, 86 (2004)).  Plaintiff may rebut this presumption by "proving an improper procedure occurred and by demonstrating resulting prejudice."  Id.; see also Pantoja v. Countrywide Home Loans, Inc., 640 F. Supp. 2d 1177, 1186 (N.D. Cal. 2009) (holding that courts have rejected claims of a deficient notice of default where no prejudice was suffered as the result of a procedural irregularity).

Plaintiff fails to allege facts contending that Defendants' purported violation of § 2923.5 caused her prejudice.  Courts reject claims of deficient notice where no prejudice was suffered as the result of the procedural irregularity.  See Id. at 1186-87; Pantoja, 640 F. Supp. 2d at 1186 (dismissing with leave to amend Plaintiff's claim of deficient notice of default since Plaintiff did not allege prejudice as a result of the deficiency).

For the foregoing reasons, the Court finds that Plaintiff has failed to plead sufficient facts stating her first cause of action and therefore DISMISSES WITH LEAVE TO AMEND Plaintiff's § 2923.5 claim.

### B. California Homeowner's Bill of Rights (CHBR)

### 1. Retroactivity

CHBR, and specifically California Civil Code § 2924.18(a)(2), prohibits the practice of "dual tracking" by mortgage servicers if the borrower is working on securing a loan modification.  Cal. Civ. Code § 2924.18(a)(2).  When a homeowner completes an application for a loan modification, the foreclosure process is essentially paused until the complete application

has been fully reviewed, and the borrower's mortgage servicer, trustee, mortgagee, beneficiary, or authorized agent "shall not record a notice of default, notice of sale, or conduct a trustee's sale while the complete first lien loan modification application is pending, and until the borrower has been provided with a written determination by the mortgage servicer regarding that borrower's eligibility for the requested loan modification."  Id.  Section 2924.17 prohibits the practice of "robo-signing," in which servicers sign foreclosure documents without determining the right to foreclose.  Cal. Civ. Code § 2924.17(b).  Plaintiff states claims under both §§ 2924.18 and 2924.17 of CHBR.

Defendants argue that Plaintiff's CHBR claim fails because CHBR does not apply retroactively and only applies to foreclosures initiated or pending after January 1, 2013.  (MTD at 8.)  Defendants argue that Plaintiff alleges violations of CHBR for conduct that occurred in 2008, 2010, 2011, and 2012, and thus improperly attempts to apply CHBR retroactively.  (MTD at 9.)

The Governor signed CHBR into law on July 11, 2012, and it took effect on January 1, 2013.  Michael J. Weber Living Trust v. Wells Fargo Bank, N.A., 13-CV-00542JST, 2013 WL 1196959, at *4 (N.D. Cal. Mar. 25, 2013).  Like federal courts, "California courts comply with the legal principle that unless there is an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature . . . must have intended a retroactive application."  Id. at *4 (quoting Myers v. Philip Morris Companies, Inc., 28 Cal.4th 828, 841 (Cal. 2002)).  CHBR does not state that it has retroactive effect.  Id.; see also Rockridge Trust v. Wells Fargo, N.A., C-13-01457JCS, 2013 WL 5428722, at *28 (N.D. Cal. Sept. 25, 2013).  The Court holds that CHBR cannot be retroactively applied.  See Sears v. Bank of Am., N.A., 2:13-CV-01664-KJM-AC, 2013 WL 6199197, at *3 (E.D. Cal. Nov. 27, 2013) (holding that CHBR is not retroactive because "[t]he HBR contains no language explicitly making it retroactive and no extrinsic source indicates the Legislature intended to make it retroactive").  Accordingly, for Plaintiff to properly state a claim under the CHBR, it must arise or continue to accrue after January 1, 2013.

Plaintiff argues that because she "continued to try to work with Chase through their representative" and submitted loan modification paperwork up to July 2013 (Compl. ¶ 68), the foreclosure process is currently active and retroactivity analysis is inapplicable.  (Opp'n at 15.)  However, Plaintiff's CHBR claims cannot be read together; instead, her § 2924.18 and § 2924.17 claims must be analyzed independently.  The Court finds that Plaintiff's "robo-signing" claim under § 2924.17 is barred because the purportedly "robo-signed" Substitution of Trustee was recorded on June 22, 2012, well before CHBR's effective date.  (See Compl. ¶¶ 44, 63.)  See Michael J. Weber Living Trust, 2013 WL 1196959, at *4 (holding that Plaintiff cannot succeed on its "robo-signing" claim, since it applies to actions that allegedly occurred before January 1, 2013).  However, as to the dual tracking claim under § 2924.18, Plaintiff challenges ongoing practices of Defendants through at least July 22, 2013, when Defendants recorded the Notice of Default.  (Compl. ¶ 37.)  See Ware v. Bayview Loan Servicing, LLC, 13-CV-1310 JLS NLS, 2013 WL 6247236, at *5 (S.D. Cal. Oct. 29, 2013) ("Plaintiffs, however, are challenging practices engaged in *since* January 1, 2013, when the HBR *was* in effect. Hence, Plaintiffs' claims are not premised on the retroactivity of the HBR.") (emphasis in original).

Accordingly, the Court holds that Plaintiff's claim under § 2924.17 is barred because all of the actions pled in the Complaint pursuant to this section occurred prior to January 1, 2013. This claim is DISMISSED WITH PREJUDICE. As to Plaintiff's § 2924.18 claim, the Court finds that Plaintiff pled a continuing violation of this provision extending beyond the effective date of the CHBR. The Court therefore DENIES Defendants' motion to dismiss § 2924.18 claim on the basis of retroactivity.

### 2. Preemption

Federal savings associations are organized under the Home Owners Loan Act ("HOLA"), and the Office of Thrift Supervision ("OTS") supervises them. Appling v. Wachovia Mortgage, FSB, 745 F. Supp. 2d 961, 970–71 (N.D. Cal. 2010); 12 U.S.C. §§ 1462(3) ("The term 'Federal savings association' means a Federal savings association or a Federal savings bank chartered under section 1464 of this title."). In contrast, the Office of the Comptroller of the Currency ("OCC") supervises national banks, also called national associations, under regulations codified under the National Banking Act ("NBA"). See Appling, 745 F. Supp. 2d at 970–71 (citing Bank of America v. City and County of San Francisco, 309 F.3d 551, 561–62 (9th Cir. 2002)).

Defendants acknowledge that they are national associations to which the NBA applies. (MTD at 5.) However, they encourage this Court to analogize to HOLA in evaluating whether the NBA preempts the CHBR because, they contend, "HOLA's preemption language is identical to that contained in the NBA." (Id. at 5-6.) Defendants further extrapolate their preemption argument contending that because courts have found that HOLA preempts Section 2923.5, this Court should find that the NBA preempts the entirety of the CHBR, including Plaintiff's first cause of action under § 2923.5 and her second claim under §§ 2924.18 and 2924.17. (Id. at 7-8.)

First, the Court rejects Defendants' suggestion that the Court analogize to HOLA in analyzing NBA preemption. The Court finds the analysis and reasoning in Tamburri v. Suntrust Mortgage, Inc., 875 F. Supp. 2d 1009 (N.D. Cal. 2012) persuasive. The court stated that "the analogy between the NBA and HOLA is flawed. Unlike the NBA, which contains only a conflict preemption clause, HOLA contains a broad field preemption clause." Id. at 1017. Thus, "[t]he distinction between HOLA's field preemption, on the one hand, and NBA's mere conflict preemption, on the other, renders cases construing HOLA preemption inapposite to the question of whether NBA preemption applies." Id. at 1018. Accordingly, none of the cases Defendants cite pertaining to HOLA preemption are relevant here.

Aside from HOLA cases, Defendants cite only two cases which purportedly support the conclusion that the NBA preempts Section 2923.5. (MTD at 6-7.) However, both the cases Defendants cite find NBA preemption solely by analogizing to HOLA. See Maynard v. Wells Fargo Bank, N.A., 12CV1435 AJB JMA, 2012 WL 4898021, at *4-5 (S.D. Cal. Oct. 15, 2012); Acosta v. Wells Fargo Bank, N.A., C 10-9910JF (PVT), 2010 WL 2077209, at *8 (N.D. Cal. May 21, 2010). As discussed above, such an analogy is misplaced; therefore, these cases do not support Defendants' contention that the NBA preempts all of Plaintiff's CHBR claims.

By contrast, after conducting an extensive analysis of the NBA's preemption provisions, the court in Gerber v. Wells Fargo Bank, N.A., CV 11–01083–PHX–NVW, 2012 WL 413997

(D. Ariz. Feb. 9, 2012) concluded that "state laws regulating foreclosure are [ ] not preempted by NBA." Id. at *8. The Tamburri court adopted the Gerber court's reasoning and applied it to a Section 2923.5 claim, holding that the NBA did not preempt the plaintiff's claim under that provision. Tamburri, 875 F. Supp. 2d at 1020-21. Barring contrary authority, the Court cannot find that the NBA preempts Section 2923.5.

Because Defendants provide no non-HOLA authority for the proposition that Plaintiff's CHBR claims, including § 2923.5, are preempted by the NBA, at this stage the Court cannot find that Plaintiff's claims are preempted. The Court therefore DENIES Defendants' motion on this basis.

### C. Negligent Misrepresentation

#### 1. Elements of Negligent Misrepresentation

The elements of negligent misrepresentation under California law are: "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." Argueta, 2011 WL 6012323, at *4 (E.D. Cal. Dec. 1, 2011) (quoting Apollo Capital Fund, LLC v. Roth Capital Partners, LLC, 158 Cal. App. 4th 226, 243 (2007)). In the mortgage context, California district courts have generally required that negligent misrepresentation be pled with particularity under Rule 9(b). See, e.g., Mehta v. Wells Fargo Bank, N.A., 737 F. Supp. 2d 1185, 1199 (S.D. Cal. 2010); Argueta, 2011 WL 6012323, at *4. "Rule 9(b) demands that the circumstances constituting the alleged fraud 'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (quotation omitted). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation omitted).

Defendants argue Plaintiff fails to establish the first element of a negligent misrepresentation claim, namely, that a misrepresentation, concealment, or nondisclosure of a past or existing fact occurred. (MTD at 10.) Plaintiff appears to allege that EMC falsely stated that it would send her a loan modification application if she made trial payments for the following six months, and this was an act of "stringing" her on. (Compl. ¶¶ 75, 86.) Even if EMC's statement was false, Plaintiff's claim "does not involve the misrepresentation of a past or existing material fact, but instead alleges 'promises regarding future events,'" that Defendants *would* send Plaintiff a loan modification application *if* she made trial payments for the specified period. Ventimiglia v. Wells Fargo Bank, N.A., CIV. 2:13-00953 WBS CMK, 2013 WL 3367330, at *4 (E.D. Cal. July 5, 2013) (holding that plaintiff's allegation that defendant allegedly made multiple statements that the loan would be modified during the modification process was not a negligent misrepresentation of a past or existing material fact); Garcia v. Ocwen Loan Servicing, LLC, C 10-0290 PVT, 2010 WL 1881098, at *2 (N.D. Cal. May 10, 2010) (holding that plaintiff's allegation that defendant agreed to continue working toward approval of a loan modification was insufficient to support negligent misrepresentation claim because it referred only to future events). The Complaint further alleges that "trial payments and

the requests for a permanent loan modification went on for three years," but never specifies with particularity any past or existing misrepresentation from the modification negotiations. (Compl. ¶ 75.)

The Court finds that Plaintiff has not pled the elements of negligent misrepresentation claim with the required level of particularity. Because there is a possibility that the defects in this claim can be cured by amendment, the Court DISMISSES WITH LEAVE TO AMEND Plaintiff's negligent misrepresentation claim.

### 2. Statute of Limitations

Defendants argue Plaintiff's negligent misrepresentation claim is barred by the statute of limitations. (MTD at 10.) Under California law, the limitations period for negligent misrepresentation is either two or three years, depending upon whether the allegations amount to a claim of professional negligence. Cal. Code Civ. P. §§ 338, 339; see Kariman v. Caliber Home Loans Inc., No. 2:13-CV-07034-CAS-(FFMx), 2013 WL 5947966, at *4 (C.D. Cal. Nov. 4, 2013). "Generally speaking, a cause of action accrues at 'the time when the cause of action is complete with all of its elements.'" Fox v. Ethicon Endo–Surgery, Inc., 35 Cal.4th 797, 806 (2005) (quotation omitted).

As discussed above, the Court is unable to pinpoint the alleged misrepresentation(s) by Defendants to determine whether the statute of limitations has run. In any amended pleading, Plaintiff shall allege the specific misrepresentation and "the date upon which she discovered the alleged fraud and misrepresentations." Malmen v. World Sav. Inc., CV 10-9009 AHM JEMX, 2011 WL 1464587, at *2 (C.D. Cal. Apr. 18, 2011). Accordingly, the Court DENIES Defendants' motion on the basis of the statute of limitations, without prejudice to Defendants' re-raising this defense.

### D. Breach of Good Faith and Fair Dealing

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Marsu, B.V. v. Walt Disney Co., 185 F.3d 932, 937 (9th Cir. 1999) (applying California law) (internal quotation marks omitted). That duty requires "that neither party . . . do anything which will injure the right of the other to receive the benefits of the agreement." Andrews v. Mobile Aire Estates, 125 Cal. App. 4th 578, 589 (2005) (internal quotation marks omitted). "[It] is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated in the contract." Racine & Laramie, Ltd. v. Dep't of Parks & Recreation, 11 Cal. App. 4th 1026, 1032 (1992). "Absent [a] contractual right . . . the implied covenant has nothing upon which to act as a supplement, and should not be endowed with an existence independent of its contractual underpinnings." Waller v. Truck Ins. Exchange, Inc., 11 Cal.4th 1, 36 (1995).

Defendants argue Plaintiff fails to allege the existence of a contract as the basis for her breach of good faith and fair dealing claim. (MTD at 13.) In response, Plaintiff first argues that there exists a valid contract between the parties, namely, the promissory note and corresponding Deed of Trust. (Opp'n at 18.) Plaintiff further contends that Defendants breached their

obligation under this contract by acting wrongfully in regard to Plaintiff's continuous efforts to seek a loan modification and by dual-tracking her loan. (See Id.; Compl. ¶¶ 93-104.) The Court finds that Plaintiff fails to allege that a contract to modify the loan agreement existed or that the parties contemplated or had a specific agreement under the Deed of Trust that gave Plaintiff an implied covenant to receive the benefits of a loan modification. See Rosenfield v. J.P. Morgan Chase Bank, N.A., 732 F. Supp. 2d 952, 968-69 (N.D. Cal. Aug. 9, 2010) (dismissing Plaintiff's claim for breach of implied covenant of good faith and fair dealing because Plaintiff failed to plead that a contract to modify the loan existed). Without such a contractual obligation, Plaintiff cannot establish a cause of action for a breach of an implied covenant of good faith and fair dealing, since Defendants are not obligated to negotiate a loan modification in good faith in the absence of an agreement or implied covenant to do so. See Gilliland v. Chase Home Finance, LLC, No. 2:13-cv-02042 JAM-AC, 2014 WL 325318, at *4 (E.D. Cal. Jan. 29, 2014); Prasad, 2010 WL 5090331, at *4 (granting motion to dismiss where agreement to modify loan was not sufficiently alleged).

For the foregoing reasons, the Court finds Plaintiff has not adequately pled that the parties entered into a contractual agreement to modify Plaintiff's loan or that Defendants were obligated to do so. Thus, the Court DISMISSES WITH LEAVE TO AMEND Plaintiff's breach of good faith and fair dealing claim.

### E. Unfair Competitions Law ("UCL")

#### 1. Standing

Under California Business and Professions Code Section 17204, a private person has standing to bring a claim for unfair, unlawful, or fraudulent business practice if he or she "has suffered injury in fact and has lost money or property as a result of the unfair competition." Saldate v. Wilshire Credit Corp., 686 F. Supp. 2d 1051, 1065 (E.D. Cal. 2010); Troyk v. Farmers Group, Inc., 171 Cal. App. 4th 1305, 1335 (2009). As to the injury in fact requirement, a plaintiff must "establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury[.]" Kwikset Corp. v. Super. Court, 51 Cal.4th 310, 322 (2011). For the second element, the UCL requires that plaintiff suffer an injury "as a result of" unfair competition. Cal. Bus. & Prof. Code § 17204. The plain and ordinary meaning of that term is "'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation." Hall v. Time Inc., 158 Cal. App. 4th 847, 855 (2008); see also Troyk, 171 Cal. App. 4th at 1349 ("[T]he phrase 'as a result of' connotes an element of *causation* (i.e., [plaintiff] lost money *because of* [defendants'] unfair competition)[.]").

##### a. Injury in Fact

Plaintiff alleges she suffered an economic injury as a result of the default and foreclosure proceedings. Specifically, she contends that because her loan was not modified, she had to pay expenses that she otherwise would not have incurred, "including but not limited to loss of equity, lost opportunities to work out their mortgage delinquencies, and unwarranted fees and charges for default and foreclosure costs charged to her accounts." (See Compl. ¶¶ 131-33.) "At the pleading stage, a UCL plaintiff satisfies its burden of demonstrating standing by alleging an

economic injury." Boschma v. Home Loan Center, Inc., 198 Cal. App. 4th 230, 254 (2011). In light of the minimal pleading requirements with regard to the economic injury prong, and the California Supreme Court's affirmation of an alleged diminishment of future property interest as a sufficiently pled economic injury under the statute, Plaintiff has plausibly alleged an economic injury in fact to satisfy the UCL standing requirements. See Kwikset Corp., 51 Cal.4th at 322 (listing injuries that qualify as economic injuries under the UCL, including "suffering the diminishment of a present or future property interest"); Jenkins v. JP Morgan Chase Bank, N.A., 213 Cal. App. 4th 497, 522 (2013) (holding that Plaintiff's cause of action asserting the economic injury as the impending foreclosure of her home satisfies the injury in fact prong of UCL standing). But see Lueras v. BAC Home Loans Servicing, LP, 221 Cal. App. 4th 4, 82 (2013) (finding that costs incurred in preparing and assembling materials for Plaintiff's application for a loan modification are not sufficient to qualify as injury in fact under the UCL).

### b. Causation

Plaintiff must also satisfy the causal prong of the standing requirement under the UCL. Plaintiff generally alleges that as a result of the "unlawful, unfair, and fraudulent acts and practices of Defendants," Plaintiff has "suffered and continues to suffer damages." (See Compl. ¶133.) However, because Plaintiff's Complaint does not dispute that she was in default, and that the default triggered the foreclosure process, Plaintiff fails to specifically allege whether her economic injuries, such as accrued interest, are the result of Defendants' actions or the product of her default. Plaintiff fails to show that but for Defendants' actions, she would not have suffered the economic harms she alleges. See Juarez v. Suntrust Mortg., Inc., CV F13-0485 LJO SAB, 2013 WL 1983111, at *14-15 (E.D. Cal. May 13, 2013). Plaintiff must provide facts to demonstrate Defendants' violations of the UCL caused her to incur loss of equity, lost financial opportunities, and unwarranted fees and charges that she would not otherwise have incurred.

For the foregoing reasons, the Court finds Plaintiff has not adequately pled that her economic injuries were caused by Defendants' actions, and she therefore lacks standing to assert a UCL claim. The Court thus DISMISSES WITH LEAVE TO AMEND Plaintiff's UCL claim.

### 2. Unlawful, Unfair, or Fraudulent Practice

The UCL defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. With respect to the unlawful prong of the UCL, "[a] plaintiff alleging unfair business practices . . . must state with reasonable particularity the facts supporting the statutory elements of the violation." Brooks v. Community Lending, Inc., C 07-4501 JF(PVT), 2010 WL 2680265, at *12 (N.D. Cal. July 6, 2010) (quoting Khoury v. Maly's of California, Inc., 14 Cal. App. 4th 612, 619 (1993)). Moreover, "a plaintiff may not bring an action under the unfair competition law if some other statutory provision bars such an action or permits the underlying conduct." Rothschild v. Tyco Internat. (US), Inc., 83 Cal. App. 4th 488, 494 (2000). Plaintiff contends that Defendants' violations of § 2923.5 and the CHBR, specifically § 2924.17, are sufficient to state a claim under the unlawful prong of the UCL. (Opp'n at 20.) However, as discussed above, Plaintiff's claims under these sections are dismissed for failure to allege facts stating a cause of action under § 2923.5 and as time barred

under § 2924.17. Since Plaintiff's claims under these statutory provisions are insufficient, her UCL claim based on these sections must similarly fail.

A "fraudulent" business act or practice is one which is likely to deceive members of the public. Weinstat v. Dentsply Intern., Inc., 180 Cal. App. 4th 1213, 1223 (2010). UCL claims premised on fraudulent conduct trigger the heightened pleading standard under Rule 9(b) of the Federal Rules of Civil Procedure. Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009). The Complaint fails to meet the heightened pleading standard required for fraud claims because Plaintiff only vaguely alleges how members of the public are likely to be deceived by Defendants' actions. Plaintiff alleges that Defendants committed fraud in "intentionally and negligently making false representations, in concealing material information, and in making promises they did not intend to perform," and that this "fraudulent conduct" is likely to deceive members of the public by enticing them to take on predatory loans. (Compl. ¶ 129.) However, these allegations are insufficient to meet the heightened pleading standard required to plead a fraudulent business act.

A business practice is "unfair" under the UCL when it "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." Podolsky v. First Healthcare Corp., 50 Cal. App. 4th 632, 647 (1996) (internal quotations and citations omitted). "A plaintiff alleging unfair business practices under these statutes [UCL] must state with reasonable particularity the facts supporting the statutory elements of the violation." Khoury, 14 Cal. App. 4th at 619. Plaintiff's allegations generally contend that Defendants' practices are unfair and offend an established public policy in light of the recent mortgage crisis and that they act in bad faith with respect to their borrowers, leading to immoral, unethical, oppressive, and unscrupulous conduct. (Compl. ¶¶ 125-132.) However, these facts fail to plausibly allege Defendants' unfair conduct. See Kham v. CitiMortgage, Inc., CV F13-1378 LJO JLT, 2013 WL 5486777, at *13 (2013) (holding that the complaint lacked facts to plausibly establish an unfair business practice, despite plaintiff's claims of misleading borrowers and denying them the opportunity to repay their debt).

For the foregoing reasons, the Court finds that Plaintiff has not adequately pled a UCL cause of action under the unlawful, fraudulent, or unfair prongs. Thus, the Court DISMISSES WITH LEAVE TO AMEND Plaintiff's UCL claim.

### F. Cancellation of Instruments Against all Defendants

#### 1. Tender

Defendants argue that Plaintiff's claim to cancel non-judicial foreclosure instruments should be dismissed because Plaintiff fails to allege proper and valid tender. (MTD at 16.) Defendants invoke the tender rule to argue that the tender requirement applies to any cause of action "implicitly integrated" with allegations of an irregular foreclosure sale. Arnolds Mgmt. Corp. v. Eischen, 158 Cal. App. 3d 575, 578-79 (1984).

The tender rule is an equitable doctrine meant to prevent courts "from uselessly setting aside a foreclosure sale on a technical ground when the party making the challenge has not

established his ability to purchase the property." <u>Plastino v. Wells Fargo Bank</u>, 873 F. Supp. 2d 1179, 1187 (N.D. Cal. 2012) (quotation omitted). Thus, "as a precondition to challenging a foreclosure sale, or any cause of action implicitly integrated to the sale, the borrower must make a valid and viable tender of payment of the secured debt." <u>Sacchi v. Mortgage Elec. Registration Sys., Inc.</u>, 11–cv–1658–AHM, 2011 WL 2533029, at * 9 (C.D. Cal. June 24, 2011) (quotation omitted). However, "the exceptions and qualifications to California's 'tender rule' counsel against such a mechanical application of the rule at the pleading stage." <u>Barrionuevo v. Chase Bank, N.A.</u>, 885 F. Supp. 2d 964, 969 (N.D. Cal. 2012). Thus, the tender rule is not without exceptions. <u>Tamburri v. Suntrust Mortg., Inc.</u>, 11-cv-2899-EMC, 2011 WL 6294472, at *3 (N.D. Cal. Dec. 15, 2011).

The sole exception claimed by Plaintiff is that since Plaintiff is not trying to undo the sale of her property, but rather is trying to prevent a sale, it is not necessary for Plaintiff to provide tender. (Opp'n at 20.) Several courts have recognized an exception to the tender rule when a party is seeking to prevent a sale, rather than set aside a completed sale. <u>See Wickman v. Aurora Loan Servs., LLC</u>, 12CV1702 JAH DHB, 2013 WL 4517247, at *3-4 (S.D. Cal. Aug. 23, 2013); <u>Tamburri</u>, 2011 WL 6294472, at *3–5 (noting several courts do not apply tender rule if action is brought before foreclosure sale). This exception applies to Plaintiff, as such, failure to tender is not fatal to the complaint.

### 2. California Civil Code Section 3412

Plaintiff seeks to cancel the (1) Notice of Default on the grounds that Barret Daffin had not been substituted in as trustee at the time it was executed (Compl. ¶¶ 136-38); (2) the Notice of Trustee's Sale based on the fact that Ric Juarez signed as an employee of Barret Daffin but was previously an employee of NDEx (Compl. ¶ 143.); and (3) the Assignment of Deed of Trust (Compl. ¶ 146). A request for the cancellation of an instrument such as a deed of trust is an equitable remedy that is dependent upon a substantive basis for liability and has no separate viability. <u>See Bridgeman v. U.S.</u>, No. 2:10–cv–01457, 2011 WL 221639, at *17 (E.D. Cal. Jan. 21, 2011); <u>Yazdanpanah v. Sacramento Valley Mortgage Group,</u> C09–02024, 2009 WL 4573381, at *6 (N.D. Cal. Dec.1, 2009). Thus, the viability of a cancellation of instruments cause of action turns on the Plaintiff's other claims for relief. <u>Reade v. CitiMortgage, Inc.</u>, 13cv404L(WVG), 2013 WL 5964611, at *9 (S.D. Cal. Nov. 7, 2013).

As explained above, Plaintiff failed to allege sufficient facts to state a claim under any of her other causes of actions. In addition, Plaintiff has not put forth a plausibly factual basis to conclude that Defendant Barrett Daffin did not have authority to record the Notice of Default as an authorized agent. Nor does Juarez' prior employment with NDEx subject the Notice of Trustee's Sale to cancellation. Moreover, Plaintiff offers no facts as to why the Assignment of Deed of Trust is void and subject to cancellation.

Thus, the Court DISMISSES Plaintiff's cancellation claim WITH LEAVE TO AMEND for failure to state a claim and failure to properly allege prejudice.

## IV.    CONCLUSION

For the forgoing reasons, the Court GRANTS IN PART Defendants' motion to dismiss and DISMISSES the Complaint WITH LEAVE TO AMEND.

**IT IS SO ORDERED.**